UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN HANNON and BRANDIE HANNON,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 14-CV-05381-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 21 |

Plaintiffs Edwin Hannon and Brandie Hannon (collectively, "Plaintiffs") bring this action against Wells Fargo Bank, N.A. ("Wells Fargo") alleging state law claims for violations of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*, fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing. Second Amended Complaint ("SAC"), ECF No. 20, ¶¶ 39–90. Before the Court is Wells Fargo's motion to dismiss the SAC. ("Mot."), ECF No. 21. Plaintiffs opposed the motion, ("Opp'n"), ECF No. 23, and Wells Fargo filed a reply, ("Reply"), ECF No. 25. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Wells Fargo's motion, for the reasons stated below. The case management conference set for September 9, 2015, at 2:00 p.m. is hereby VACATED.

1

Case No. 14-CV-05381-LHK
ORDER GRANTING MOTION TO DISMISS

## I. BACKGROUND

### A. Factual Background[1]

On October 9, 2007, Plaintiffs took out a $620,000 loan from World Savings, a predecessor entity of Wells Fargo,[2] secured by a deed of trust recorded against real property located at 2479 Tuckahoe Terrace, Royal Oaks, CA ("the property"). ECF No. 22-1, Ex. A.

#### 1. Foreclosure Timeline

In 2009, Plaintiffs experienced financial hardship and felt that if their financial situation did not change, "they might not be able to afford their monthly [loan] payments." SAC, at 2. Sometime in early 2009, Plaintiffs defaulted on their mortgage. *Id*. ¶ 14. Following Plaintiffs' default, Regional Trustee Services Corporation recorded a notice of default on September 8, 2010. ECF No. 22-1, Ex. F. By that time, Plaintiffs had accrued $68,053.09 in overdue payments. *Id*. After Plaintiffs failed to cure the delinquency, a notice of trustee's sale was recorded on December 9, 2010, setting a sale date of December 30, 2010. ECF No. 22-1, Ex. H.

The property was eventually sold at a trustee's sale on June 30, 2011, and several days later on July 5, 2011 a trustee's deed upon sale was recorded, indicating that Wells Fargo had

---

[1] A court generally may not look beyond the four corners of a complaint in ruling on a Rule 12(b)(6) motion, with the exception of documents incorporated into the complaint by reference, and any relevant matters subject to judicial notice. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). A court may take judicial notice of matters that are either: (1) generally known within the trial court's territorial jurisdiction; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Proper subjects of judicial notice when ruling on a motion to dismiss include court documents already in the public record and documents filed in other courts. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002). Here, Wells Fargo requests judicial notice of nineteen documents in connection with its motion to dismiss. ECF No. 22. Each document is judicially noticeable as either capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, *see* Fed. R. Evid. 201(b), or is a court document already in the public record or a document filed in another court, *See Holder*, 305 F.3d at 866. Additionally, Plaintiffs do not dispute that these documents are properly subject to judicial notice, and so the Court GRANTS Wells Fargo's request for judicial notice.

[2] In 2008, World Savings changed its name to Wachovia Mortgage, FSB. ECF No. 22-1, Exs. B–D. In November 2009, Wachovia Mortgage changed its name to Wells Fargo Bank Southwest, N.A., and merged into Wells Fargo Bank, N.A. *Id*., Ex. E.

purchased the property. ECF No. 22-1, Ex I.[3]

### 2. Plaintiffs' Allegations

Plaintiffs allege that in January 2009, before Plaintiffs had defaulted on their mortgage, Plaintiffs contacted Wells Fargo about a possible loan modification, and that on January 8, 2009 an unspecified Wells Fargo representative interviewed Plaintiffs. SAC ¶ 14. According to Plaintiffs, this Wells Fargo representative informed Plaintiffs that under the Home Affordable Mortgage Program ("HAMP") guidelines Plaintiffs "could not be considered for a modification unless and until they went into default and remained in default for three months." *Id*. The SAC alleges that the Wells Fargo representative told Plaintiffs that if they were to default, "they would qualify for a loan modification under HAMP or under one of Wells Fargo's internal loan modification programs." *Id*. The Wells Fargo representative also allegedly informed Plaintiffs that their default would not be reported to any credit-reporting agency. *Id*. According to Plaintiffs, these representations were false: debtors need not be in default to seek modification under HAMP, Wells Fargo denied Plaintiffs' applications for a loan modification, and Wells Fargo reported Plaintiffs' default to credit-reporting agencies. *Id*. at 2.

Plaintiffs state that in reliance on these representations, Plaintiffs stopped making monthly mortgage payments and went into default. *Id*. ¶ 14. Shortly after Plaintiffs defaulted, a different unnamed Wells Fargo loan modification representative interviewed Plaintiffs about their income and assets. *Id*. According to the SAC, this second representative informed Plaintiffs that they qualified for a loan modification and would receive a written proposal for modification "subject only to documentary verification of their income and assets." *Id*. Plaintiffs allege that they received this written proposal on April 14, 2009, which included the following terms: (1) Wells Fargo would forgive accrued, outstanding non-capitalized interest through May 15, 2009; (2) Plaintiffs' loan balance would be reduced to $573,505.23; (3) the interest rate on the loan would

---

[3] It is unclear why the foreclosure sale was postponed six months until June 2011, and neither party has sought judicial notice of a later notice of trustee's sale. However, the parties do not appear to dispute the propriety of the eventual sale.

1  decrease to 3.12%; and (4) Plaintiffs' monthly mortgage payment would fall from $2,700 to
2  $1,970. *Id*. ¶ 15. Plaintiffs allege that at some unspecified time thereafter, Plaintiffs contacted
3  Wells Fargo and a third unnamed loan modification representative instructed Plaintiffs to submit
4  documentation of their income and assets. *Id*. ¶ 16.

5  The SAC alleges that on April 28, 2009, Plaintiffs submitted a reduced payment of
6  $1,971.11 to Wells Fargo. *Id*. ¶ 17. Plaintiffs submitted the "requested documentation" the
7  following day, on April 29, 2009. *Id*. ¶ 18.

8  Plaintiffs allege that over the ensuing months Plaintiffs submitted documentation of their
9  income and assets several times, and received inconsistent responses from Wells Fargo. On June
10 19, 2009, two months after they allegedly submitted the requested documentation for the first
11 time, Plaintiffs received a letter from Wells Fargo requesting that Plaintiffs resubmit the prior
12 documentation. *Id*. ¶ 18. On June 24, 2009, Plaintiffs received another letter from Wells Fargo
13 requesting the same documents. *Id*. ¶ 20. Plaintiffs allege that four months later Plaintiffs sent a
14 letter to Wells Fargo "explaining that they had submitted the requested documents on multiple
15 occasions, called Wells Fargo numerous times, and still had not heard anything about the
16 modification." *Id*. ¶ 21. Early the following year, on February 1, 2010, Plaintiffs submitted
17 "additional documents" to Wells Fargo. *Id*. ¶ 22. On March 31, 2010, Plaintiffs received a letter
18 from Wells Fargo stating that: "In order to move forward with modification process . . . . You
19 must return all documents related to your current sources of income." *Id*. ¶ 23. Plaintiffs allege
20 that on the following day, April 1, 2010, Plaintiffs received a letter from Wells Fargo rejecting
21 Plaintiffs' application for a loan modification. *Id*. ¶ 24.

22 The SAC alleges that on May 17, 2010, Plaintiffs spoke to yet another unnamed Wells
23 Fargo representative who contradicted the rejection letter and told Plaintiffs that Plaintiffs were
24 still under consideration for a loan modification. *Id*. ¶ 25. According to Plaintiffs, Plaintiffs
25 submitted "additional documents" on May 25, June 21, and June 23, 2010. *Id*. ¶ 26. According to
26 Plaintiffs, Wells Fargo advised Plaintiffs on June 23, 2010 that all the documents Plaintiffs had
27 submitted until that point had been lost and would need to be resubmitted. *Id*. ¶ 27.

28

4
Case No. 14-CV-05381-LHK
ORDER GRANTING MOTION TO DISMISS

Six months later, on December 16, 2010, Plaintiffs received a letter from Wells Fargo informing Plaintiffs that they were still under consideration for a modification. *Id*. ¶ 28. Plaintiffs submitted "the documents" again on December 18, 2010. *Id*. ¶ 29. Wells Fargo informed Plaintiffs by letter later that month on December 28, 2010 that Wells Fargo was still considering Plaintiffs' application. *Id*. ¶ 30. On January 21, 2011, Plaintiffs received a second rejection letter, which stated that Wells Fargo was "unable to offer [Plaintiffs] a mortgage assistance plan modification because [of Plaintiffs'] excessive financial obligations." *Id*. ¶ 31.

Plaintiffs sent yet another letter seeking a loan modification on February 9, 2011 and received a response from Wells Fargo on February 24, 2011 stating that Plaintiffs were eligible for a modification. *Id*. ¶¶ 32–33. Finally, on June 14, 2011, Plaintiffs received a third rejection letter from Wells Fargo, which stated that Plaintiffs were ineligible for a modification because Plaintiffs had failed to provide the requested documents. *Id*. ¶ 34. Plaintiffs sent another letter seeking a loan modification a week later on June 21, 2011. *Id*. ¶ 35. On June 29 or 30, 2011, Wells Fargo foreclosed on the property.[4]

Following the foreclosure, Plaintiffs sent Wells Fargo a letter stating that Plaintiffs had sought to make mortgage payments several times "leading up to the notice of default" on September 8, 2010, but that Plaintiffs were rebuffed because the payments "were less than the total amount owed." *Id*. ¶ 37. The letter also states that Plaintiffs' expected 2013–2015 annuity payments entitled them to the modification. *Id*.

The SAC alleges that on September 25, 2011, Plaintiffs were evicted from the property. *Id*. ¶ 38. However, according to Wells Fargo, Plaintiffs remained in possession of the property until at least mid-2012. *See* ECF No. 22-2, Ex. M (motion filed on March 23, 2012 by Wells Fargo in Brandie Hannon's bankruptcy proceeding for relief from automatic bankruptcy stay, indicating that Plaintiffs were still in possession of the property and that Wells Fargo intended to institute

---

[4] The SAC states that Wells Fargo foreclosed on June 29, 2011, *see* SAC ¶ 36, while the trustee's deed upon sale states that the property was sold at public auction on June 30, 2011, *see* ECF No. 22-1, Ex. I.

5
Case No. 14-CV-05381-LHK
ORDER GRANTING MOTION TO DISMISS

possession proceedings). Plaintiffs do not contest this assertion in their opposition, and it is unclear when Plaintiffs relinquished possession of the property.

Based on these allegations, Plaintiffs bring four claims for relief against Wells Fargo: (1) violation of California's UCL;[5] (2) fraud; (3) breach of contract; and (4) breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 39–90.

### 3. Plaintiffs' Bankruptcy Petitions

Plaintiffs collectively filed four bankruptcy petitions in the Northern District of California and received a series of automatic stays from any act to obtain possession of the property until the time of dismissal or discharge of the bankruptcy proceedings.

Brandie Hannon filed a Chapter 7 bankruptcy on March 9, 2012. *See id.* In her filings, Ms. Hannon acknowledged Wells Fargo was the owner of the property, but did not disclose any of the instant claims in her petition, bankruptcy schedules, and statement of financial affairs. *See* ECF No. 22-2, Ex. L. Wells Fargo filed a motion for relief from the automatic bankruptcy stay on March 29, 2012 because Plaintiffs had not vacated the property, and possession proceedings would be necessary. ECF No. 22-2, Ex. M. The Bankruptcy Court granted Wells Fargo's motion on May 2, 2012. ECF No. 22-2, Ex. K, Dkt. No. 18. The Bankruptcy Court dismissed Brandie Hannon's Chapter 7 case on May 10, 2012 because Ms. Hannon failed to file required tax returns. ECF No. 22-2, Ex. M, Dkt. No. 20.

Edwin Hannon filed three Chapter 13 bankruptcies on May 21, 2012, June 11, 2012, and August 22, 2012. *See* ECF No. 22-2, Exs. N, O, P. Mr. Hannon did not disclose his claims against Wells Fargo in his three petitions, which were filed without bankruptcy schedules or statements of financial affairs. *See* ECF No. 22-2, Exs. Q, R and ECF No. 22-3, Ex. S. The Bankruptcy Court dismissed each of Mr. Hannon's cases in 2012 because Mr. Hannon failed to provide required bankruptcy documents, including schedules of assets and liabilities and statements of financial

---

[5] Although the SAC does not specifically cite California's Business and Professions Code, the first cause of action is for "Violation of Unfair Competition Law," SAC at 9, and the parties discuss the UCL in connection with this cause of action, *see* Mot. at 7, Opp'n at 7–10.

6
Case No. 14-CV-05381-LHK
ORDER GRANTING MOTION TO DISMISS

affairs. *See* ECF No. 22-2, Exs. N, O, P (docket printouts indicating debtor filed no bankruptcy schedules or statements of financial affairs). Wells Fargo moved for relief from the automatic bankruptcy stay in Mr. Hannon's second bankruptcy case, but the Bankruptcy Court dismissed the case before ruling on the motion. ECF No. 22-2, Ex. O, at 7 (dropping hearing on motion for relief from stay in light of August 20, 2012 dismissal).

### B. Procedural Background

Plaintiffs filed their initial complaint in Monterey Superior Court on June 27, 2014. ECF No. 22-1, Ex. J. Before serving the initial complaint, Plaintiffs filed a first amended complaint ("FAC") on November 6, 2014. ECF No. 1, at 1–5. On December 8, 2014, Wells Fargo removed the case to this Court. *Id*.

On January 5, 2015 Wells Fargo filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the FAC on the grounds that Plaintiffs' claims in the FAC were barred by judicial estoppel and the applicable statutes of limitations, and that the FAC failed to state a claim for relief. ECF No. 11. Plaintiffs failed to oppose the motion. On March 16, 2015 the Court issued an order to show cause why the case should not be dismissed for failure to prosecute. ECF No. 15. After Plaintiffs filed a response and appeared at the hearing on the order to show cause, the Court granted Wells Fargo's motion to dismiss without prejudice on March 30, 2015. ECF No. 19. In its order, the Court warned Plaintiffs that "[f]ailure to meet the thirty-day deadline to file an amended Complaint or failure to cure the deficiencies identified by Wells Fargo in its Motion to Dismiss [would] result in a dismissal with prejudice of Plaintiffs' claims." *Id*. at 2. Plaintiffs filed their SAC thirty-one days later, on April 30, 2015. ECF No. 20. Although the Court notes that Plaintiffs failed to meet the thirty-day deadline set by the Court, the Court in its discretion declines to dismiss the SAC on this basis.

On May 14, 2015, Wells Fargo moved to dismiss the SAC. ECF No. 21. Wells Fargo also requests judicial notice of various documents relating to the property, the foreclosure, and Plaintiffs' bankruptcy proceedings. ECF No. 22. Plaintiffs filed an opposition on June 5, 2015, ECF No. 24, and Wells Fargo filed a reply on June 18, 2015, ECF No. 27.

7
Case No. 14-CV-05381-LHK
ORDER GRANTING MOTION TO DISMISS

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A defendant may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, a court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

### B. Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"

*Id.* at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). If amendment would be futile, a dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

### III. ANALYSIS

The SAC alleges claims for: (1) violation of California's UCL; (2) fraud; (3) breach of contract; and (4) breach of the implied covenant of good faith and fair dealing. SAC ¶¶ 39–90. Wells Fargo moves to dismiss the SAC on several grounds. First, Wells Fargo argues that Plaintiffs are judicially estopped from pursuing their claims. Mot. at 4–6. Second, Wells Fargo argues that Plaintiffs' claims are time-barred. *Id*. at 6–9. Finally, Wells Fargo argues that for several reasons the SAC fails to state actionable claims under the UCL, for fraud, or for breach of contract or of the implied covenant of good faith and fair dealing. *Id*. at 9–16. As discussed below, the Court finds that Plaintiffs are judicially estopped from pursuing their claims because Plaintiffs failed to disclose these claims in their earlier bankruptcy proceedings. Thus, the Court need not reach Wells Fargo's remaining arguments.

Judicial estoppel is an equitable doctrine, invoked by a court at its discretion, which precludes a party from gaining an advantage by asserting one position and subsequently taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990). The doctrine applies to prevent a party from asserting inconsistent positions in different cases, as well as in a single litigation. *Hamilton*, 270 F.3d at 783. The United States Supreme Court has identified three factors that courts may consider in determining whether to apply the doctrine of judicial estoppel: (1) whether a party's position is "clearly inconsistent" with its earlier position; (2) whether the first court accepted the party's earlier position; and (3) whether the party seeking to assert an inconsistent

9
Case No. 14-CV-05381-LHK
ORDER GRANTING MOTION TO DISMISS

position would deriv an unfair advantage if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001). Generally, "[i]n addition to these factors, the Ninth Circuit examines 'whether the party to be estopped acted inadvertently or with any degree of intent.'" *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1164 (C.D. Cal. 2008) (internal quotations marks omitted).

"In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Hamilton*, 270 F.3d at 783 (citing *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992)). The application of judicial estoppel in the bankruptcy setting is important "to protect the integrity of the bankruptcy process," for "[t]he debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by *listing all his assets*." *Id*. at 785 (emphasis added). Further, the Bankruptcy Code subjects debtors to a continuing duty to disclose all pending and potential claims. *See* 11 U.S.C. § 521(a)(1). "Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Id*. at 784. Finally, in the bankruptcy context courts generally "apply a presumption of deliberate manipulation" and need not inquire into whether a plaintiff's bankruptcy filing was inadvertent or mistaken. *Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013). Only in the limited circumstance where "the plaintiff-debtor reopens bankruptcy proceedings, corrects her initial error, and allows the bankruptcy court to re-process the bankruptcy with the full and correct information, [does] a presumption of deceit no longer comport[] with [the Supreme Court's holding in] *New Hampshire*." *Id*. at 276.

Here, it is undisputed that the facts and events upon which Plaintiffs base their claims occurred between January 8, 2009, when Plaintiffs contacted Wells Fargo about obtaining a loan modification, and June 29 or 30, 2011, when Wells Fargo foreclosed on the property. SAC ¶¶ 14–36. Thus, Plaintiffs had "knowledge of enough facts to know [of] a potential cause of action"

10
Case No. 14-CV-05381-LHK
ORDER GRANTING MOTION TO DISMISS

against Wells Fargo by the end of June 2011 at the latest. Despite Plaintiffs' knowledge of the facts that they allege support their claims against Wells Fargo in mid-2011, none of Plaintiffs' four bankruptcy petitions, filed between March and August 2012, disclosed any claims against Wells Fargo, a fact that is also undisputed. *See* SAC ¶ 10; *see also* Opp'n at 5.

Weighing the factors that govern the application of judicial estoppel, the Court finds that Plaintiffs are judicially estopped from pursuing their claims in this case. By failing to list claims against Wells Fargo in their bankruptcy petitions, Plaintiffs have asserted "clearly inconsistent" positions across cases. *See Hamilton*, 270 F.3d at 784 ("[Plaintiff] clearly asserted inconsistent positions. He failed to list his claims against [defendant] as assets on his bankruptcy schedules, and then later sued [defendant] on the same claims."). Further, the Bankruptcy Courts "accepted" this position and granted the Plaintiffs the benefit of four automatic stays. *See id*. at 784–85 ("Our holding does not imply that the bankruptcy court must actually discharge debts before the judicial acceptance prong may be satisfied. The bankruptcy court may 'accept' the debtor's assertions by relying on the debtor's nondisclosure of potential claims in many other ways . . . . [Plaintiff] did enjoy the benefit of [ ] an automatic stay . . . ."); *see also Sharp v. Nationstar Mortgage, LLC*, Case No. 14-0831, 2014 WL 4365116, at *5 (N.D. Cal. Sept. 3, 2014) (automatic bankruptcy stay is sufficient to meet judicial acceptance prong); *Swendsen v. Ocwen Loan Servicing, LLC*, Case No. 13-2082, 2014 WL 1155794, at *5 (E.D. Cal. Mar. 21, 2014) (same); *HPG Corp. v. Aurora Loan Servs., LLC*, 436 B.R. 569, 578 (E.D. Cal 2010) (same).

As to unfair advantage, Plaintiffs' failure to disclose their claims against Wells Fargo deceived the Bankruptcy Court and thus undermined the integrity of the bankruptcy process. *See Hamilton*, 270 F.3d at 784–85. Plaintiffs' bankruptcy proceedings gave rise to automatic bankruptcy stays under 11 U.S.C. § 362(a). *See, e.g.*, ECF No. 22-1, Ex. K at 3 (docket entry in Brandie Hannon's bankruptcy proceeding indicating Wells Fargo's motion for relief from the automatic bankruptcy stay entered by the Bankruptcy Court). "The law in this area is clear: a plaintiff who has received the benefit of an automatic stay under 11 U.S.C. § 362(a) would receive an unfair advantage by prosecuting claims against a defendant after failing to disclose those claims

11
Case No. 14-CV-05381-LHK
ORDER GRANTING MOTION TO DISMISS

in his bankruptcy proceedings." *Swendsen*, 2014 WL 1155794, at \*6.

Finally, while Plaintiffs contend that their failure to list their claims against Wells Fargo in Plaintiffs' various bankruptcy proceedings was inadvertent, *see* SAC ¶ 10, Plaintiffs do not allege that they ever corrected filings in any of the four bankruptcy proceedings to include their claims against Wells Fargo. Accordingly, the "presumption of deliberate manipulation" applies. *See Ah Quin*, 733 F.3d at 273. Even were the Court to inquire as to Plaintiffs' intent, the SAC does not allege any *facts* that would indicate that Plaintiffs' failure to disclose their claims against Wells Fargo was the result of inadvertence or mistake. SAC ¶ 10. Moreover, Plaintiffs' pro se status before the bankruptcy court is insufficient to establish inadvertence or mistake. *Montgomery v. Nat'l City Mortg.*, Case No. 12–1359, 2012 WL 1965601, at \*7 (N.D. Cal. May 31, 2012) (A plaintiff's "pro se status in and of itself does not establish a mistake."); *see also Sharp*, 2014 WL 4365116, at \*6 (same). Nor does the Court find plausible Plaintiffs' unsupported assertion that their failure to list claims against Wells Fargo was inadvertent given that: (1) Plaintiffs affirmatively allege that the purpose of their bankruptcies was to "stave off eviction" after the foreclosure; and (2) Plaintiffs together filed four separate bankruptcy proceedings and failed to list their claims against Wells Fargo in each case. *Id*. The Court therefore finds that Plaintiffs have failed to overcome the presumption of deliberate manipulation and failed to show that judicial estoppel should not apply because of inadvertence or mistake.

Plaintiffs' other arguments against the application of judicial estoppel to this case are also unavailing. First, Plaintiffs argue that because Edwin Hannon did not file a schedule of assets and liabilities or statement of financial affairs in any of his three bankruptcies, he took no position regarding his claims against Wells Fargo. Opp'n at 5. Plaintiffs conclude that as a result, the Bankruptcy Court was not misled, Plaintiffs enjoyed no unfair advantage, and Plaintiffs have not taken an inconsistent position by filing this action. *Id*. However, as Wells Fargo notes, Plaintiffs cite no authority in support of the position that judicial estoppel should not apply where a plaintiff files no schedule of assets and liabilities or statement of financial affairs rather than omitting claims from actual filings. Nor do Plaintiffs explain why there should be a difference. In either

12

Case No. 14-CV-05381-LHK
ORDER GRANTING MOTION TO DISMISS

case, claims are not disclosed to the Bankruptcy Court, and the plaintiff receives the benefit of a bankruptcy stay. *See Hamilton*, 270 F.3d at 785 ("The debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by *listing all his assets*.") (emphasis added). Where a plaintiff, as here, files a series of bankruptcy petitions and fails to disclose potential claims, whether by omitting the claims from bankruptcy filings or by simply failing to file required bankruptcy documents, judicial estoppel should apply to bar future prosecution of undisclosed claims.

Second, Plaintiffs argue that while Brandie Hannon did file a schedule of assets and liabilities in which she failed to list her claims against Wells Fargo, she held out hope that Wells Fargo might somehow change course and roll back the completed foreclosure process and trustee's sale based on her appeal to Wells Fargo's Office of Executive Complaints. Opp'n at 5. However, this argument fails because at the time Ms. Hannon filed a bankruptcy petition, she had potential claims against Wells Fargo. Plaintiffs' claims arise out of Wells Fargo's allegedly fraudulent conduct in inducing Plaintiffs to default on their mortgage and rejecting their application for a loan modification. At the point she filed her bankruptcy petition, Ms. Hannon was aware of these allegedly fraudulent acts and the consequences, including the foreclosure and Plaintiffs' loss of their home. Ms. Hannon was under "an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*" in her bankruptcy filing. *Hamilton*, 270 F.3d at 785. Because Ms. Hannon failed to disclose these potential claims against Wells Fargo in her bankruptcy filings, judicial estoppel applies. *Id.* at 784 ("Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy"); *see also Jones-Riley v. Hewlett Packard Co.*, Case No. 13-0125, 2015 WL 300703, at *3 (E.D. Cal. Jan. 22, 2015) (judicial estoppel barred claims not disclosed in bankruptcy despite plaintiff's assertions that she "never considered" disclosing the claims in her bankruptcy filings because "she assigned no value to the claim[s] and hoped the disagreement would resolve"); *Curry v. Wells Fargo Bank, N.A.*, Case No. 14-1311, 2014 WL 4375615, at *2 (E.D. Cal. Sept. 3, 2014) (plaintiff judicially estopped from asserting claims where "plaintiff had

knowledge of the facts and circumstances giving rise to his claims against defendant before plaintiff filed his petition for bankruptcy"); *Montgomery*, 2012 WL 1965601, at *6 (finding informal attempts to resolve dispute underlying claim "immaterial" to judicial estoppel analysis because "[a] potential cause of action still existed").

Third, Plaintiffs contend that their failure to disclose claims against Wells Fargo in Plaintiffs' bankruptcy proceedings provided them no unfair benefit, as the bankruptcies were dismissed within weeks of filing and no debts were discharged. SAC ¶ 10. This argument fails because "discharge of the debt is not a prerequisite to finding judicial estoppel." *Rabidou v. Wachovia Corp.*, Case No. 14-03684, 2014 WL 7206700, at *3 (N.D. Cal. Dec. 18, 2014). Plaintiffs obtained automatic bankruptcy stays, which prevented Wells Fargo from taking any actions during the pendency of the bankruptcy proceedings to obtain possession of the property. As discussed above, automatic bankruptcy stays constitute an unfair advantage and support the application of judicial estoppel where a party seeks to prosecute previously undisclosed claims. *See Sharp*, 2014 WL 4365116, at *6 (finding judicial estoppel applies even where plaintiff's claims are dismissed and no debt is discharged); *see also Swendsen*, 2014 WL 1155794, at *6 (same).

Finally, Plaintiffs argue that Wells Fargo's reliance on *Sharp* and *Swendsen* is misplaced, and seek to distinguish both cases. Plaintiffs first note that unlike here, the parties in *Sharp* and *Swendsen* all filed schedules of assets and liabilities in their respective bankruptcy proceedings. Opp'n at 5–6. However, as discussed above, the Court finds immaterial the fact that Edwin Hannon's nondisclosure was the result of his failure to file a schedule of assets and liabilities or statement of finances, rather than the result of an omission of the claims from filings. Plaintiffs also point out that they did not bring this action until nearly two years after filing for bankruptcy, in contrast to the plaintiffs in *Sharp* and *Swendsen*. *Id*. Plaintiffs argue that the courts in *Sharp* and *Swendsen* relied on the short amount of time from filing for bankruptcy and prosecuting undisclosed claims in concluding that the respective plaintiffs' failure to disclose claims in Bankruptcy Court was not the result of inadvertence or mistake. *Id*. While this is true, and in

14

Case No. 14-CV-05381-LHK
ORDER GRANTING MOTION TO DISMISS

1  *Sharp* the plaintiff even filed her last bankruptcy petition after filing suit on the undisclosed
2  claims, *see* 2014 WL 4365116, at *5, it does not save Plaintiffs' claims here. As the Court
3  discussed above, the presumption of deliberate manipulation applies in this case, and Plaintiffs
4  have alleged no facts to rebut that presumption.

In sum, the Court finds that Plaintiffs failed to disclose the claims asserted in this case against Wells Fargo in their four earlier bankruptcy proceedings. Having weighed the relevant factors, the Court concludes in its discretion that Plaintiffs are judicially estopped from pursuing such claims in this action.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Wells Fargo's motion to dismiss. Plaintiffs have failed to cure the deficiencies identified by Wells Fargo in its earlier motion to dismiss, including the fact that Plaintiffs are judicially estopped from pursuing the claims in this action. The Court previously warned Plaintiffs that failure to cure such deficiencies would result in a dismissal with prejudice. ECF No. 19, at 2. Accordingly, the Court finds that further amendment would be futile and denies leave to amend. *See Mujica v. AirScan Inc.*, 771 F.3d 580, 593 & n.8 (9th Cir. 2014); *Dumas*, 90 F.3d at 393. The Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: August 13, 2015

_____
LUCY H. KOH
United States District Judge